UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

ROBERT S. WILSON,                    )
                                     )
            Petitioner,              )
                                     )
v.                                   )        No.  1:11-cv-304
                                     )        *Judge Curtis L. Collier*
BRUCE WESTBROOKS,                    )
                                     )
            Respondent.              )

## MEMORANDUM OPINION

Acting *pro se*, Robert S. Wilson ("Wilson" or "Petitioner"), an inmate confined in the Bledsoe County Correctional Complex, brings this petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging the legality of his confinement under a 2003 Marion County, Tennessee Circuit Court judgment (Court File No. 1).   A jury convicted Wilson of attempted aggravated sexual battery and rape of a child, and, for these offenses, he is serving an effective prison sentence of twenty-seven years (as modified, on appeal, from thirty-one years). Warden Jim Morrow has filed an answer to the petition, which is supported by copies of the state court record (Court File Nos. 7 and 13, Addenda 1-4). Petitioner has replied to the Warden's answer (Court File No. 25), and thus the case is ripe for disposition.

## I.      PROCEDURAL HISTORY

Wilson's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court declined any further review.  *State v. Wilson*, No. M2004-00110-CCA-R3-CD, 2005 WL 292434 (Tenn. Crim. App. Feb. 4, 2005), *perm. app. den.* (Tenn. 2005).  Petitioner's subsequent application for post- conviction relief was denied by the state courts.  *Wilson v. State*, No. M2010-00764-CCA-R3-PC, 2011 WL 1672035 (Tenn. Crim.

App. May 3, 2011), *perm. app.den*. (Tenn. 2011). There followed this timely habeas corpus application.

## II.    BACKGROUND

The factual recitation is taken from the Tennessee Court of Criminal Appeals' ("CCA") opinion on direct appeal of Petitioner's convictions.

In 2000, Susan Audrey Condra, the mother of the minor female victim, separated from her husband and, after a month, began a romantic relationship with [Petitioner]. Within two months, the [Petitioner] had moved into the residence that Ms. Condra shared with her son, her mother, her stepfather, and the victim, C.C. Approximately, five months later, [Petitioner], Ms. Condra, and the children moved into the residence of [Petitioner's] mother, where they lived for approximately two months. From there, Ms. Condra moved with [Petitioner] and her children into a room at Ridley's Motel. Ms. Condra and the children referred to the residence at the motel as "the one room shack." The family lived at the motel on two separate occasions, the first time in August and September of 2000 and the second from November of 2000 to February of 2001. During the month of October 2000, the family stayed at the residence of Ms. Condra's father. From "the one room shack," Ms. Condra, her children, and [Petitioner] moved into "the big apartment," which was located in a housing project. In August of 2001, the victim and her brother were removed from Ms. Condra's custody by the Department of Children's Services. Later, Ms. Condra's parental rights were terminated and at the time of trial, the children were living with a foster family.

Ms. Condra testified that when she was dating [Petitioner], she drank alcohol every day until she passed out. She stated that [Petitioner] also drank heavily during their relationship. Ms. Condra recalled that on one occasion in March or April of 2001, while the family was living in "the big apartment," she awoke in the middle of the night and heard the victim scream, "No." Ms. Condra stated that when she looked into the bathroom, she saw the victim facing [Petitioner] and "sitting up partly on the floor." [Petitioner] had his hand on the back of the victim's head. When she tried to open the door fully, [Petitioner] prevented her from doing so.

Ms. Condra also testified that on the victim's seventh birthday, the victim was wearing shorts and a bathing suit. She recalled leaving the residence to purchase items for the birthday celebration and when she returned, she found that the victim's bathing suit had been torn and that she was no longer wearing her shorts.

The victim, C.C., who was born on June 9, 1994, testified that on her seventh birthday, while the family was living in "the big apartment," [Petitioner] forced her to perform oral sex. C.C. recalled that she was playing checkers with her older brother when [Petitioner] directed her to the living room. According to C.C., [Petitioner], who was seated on the couch, ordered her to "suck his thing," which, she said, looked like "a worm." C.C. recalled another incident at "the big apartment" when [Petitioner] pulled her into the bathroom and forced her to perform oral sex. She remembered that her mother tried to open the bathroom door but [Petitioner] "push[ed] on it to where she couldn't open it." C.C. testified that on a third occasion, when the family was living in "the one room shack," [Petitioner] "came to my bed and was pulling on my feet and he made me suck his thing." She stated that on each occasion, [Petitioner] instructed her to "suck it like a lollipop."

C.C. also testified that while the family was living in "the big apartment," [Petitioner] had penetrated her anally twice. She stated that on the first occasion, her mother had gone to visit a relative and "[Petitioner] told [J.C.] to go outside and do something and ... [Petitioner] took me to my mom's room and he put it up my butt." C.C. recalled that on that occasion, she "had to use the bathroom very bad and [Petitioner] wouldn't let [her] go and when he got finished the[re] was crap on it." As to the second occasion, C.C. remembered that she was playing checkers with her brother when [Petitioner] called her into the living room, forced her to lean over a chair, and then "put his thing up my butt." C.C. testified that [Petitioner] penetrated her vaginally while they lived at "the big apartment." She stated that as [Petitioner] was "[t]rying to put his private up [her]," she was "trying to get [Petitioner] away from [her] and [she] was kicking."

[J.C.], the victim's older brother, corroborated the incident that occurred on the victim's seventh birthday. He remembered hearing [Petitioner] tell the victim to "suck it." He and the victim had been playing checkers and when she did not return immediately, [J.C.] walked toward the living room and looked through a hole in the quilt that the family used to divide the living room from the rest of the apartment. He then saw [Petitioner] seated on a chair with the victim on her knees in front of him. [J.C.] testified that both were nude and [Petitioner's] penis was in the victim's mouth. He explained that he did not report the incident to his mother because he was afraid of [Petitioner], who had beaten him on previous occasions.

Kathy Spada, a nurse practitioner at The Children's Advocacy Center, performed a physical examination of the victim in October 2001. Ms. Spada testified that although the victim's hymen was intact, such a finding did not necessarily mean that there had been no vaginal penetration. She stated that there were no fissures around the victim's

3

rectal area and that the victim had no loss of tone. During cross-examination, Ms. Spada acknowledged that neither the victim's vagina nor anus showed visual signs of trauma such as scarring or healing wounds.

At the close of its proof, the [S]tate made an election of the incidents upon which it was relying for conviction. As to count one, wherein [Petitioner] was charged with aggravated sexual battery, the prosecution announced reliance on the incident of oral sex that occurred in the bathroom of "the big apartment" as described by the victim and her mother. As to count two, the state chose to rely on the incident of oral sex that occurred on the victim's seventh birthday.

[Petitioner's] mother, Helen Wilson, testified on behalf of the defense. Ms. Wilson recalled that [Petitioner], Ms. Condra, and the two children came to live with her in June of 2000 because they had nowhere else to go. She testified that she asked them to leave two months later because the children were "on [her] nerves." Ms. Wilson remembered that she warned her son that "if he didn't get away from that girl and them two kids he was going to end up in trouble." According to Ms. Wilson, the victim and her brother "loved [Petitioner] and he loved them." She claimed that the victim called [Petitioner] "daddy" and that he often helped her with her homework.

Kelly Butram, an employee of the Department of Children's Services, testified that on August 31, 2001, he received a call from the police, who reported that [Petitioner] had beaten the victim's brother. He stated that although he did not interview the victim with regard to her claims of sexual abuse, the allegations first came to light during his investigation of the August 31 incident. Butram, who sat in on the interview of the victim conducted by employees of the Children's Advocacy Center, testified that the children were removed from their mother as a result of the beating and that her parental rights were later terminated.

[Petitioner] testified that he began dating the victim's mother in January of 2000 but that they did not start living together until June of that same year. He stated that they first lived with his mother, then with a friend of his, then at Ridley's Motel, then with Ms. Condra's father, then again at Ridley's Motel, and finally at a housing project in South Pittsburg. According to [Petitioner], he and Ms. Condra had a rocky relationship but he chose not to leave because of his concern for the children. [Petitioner] testified that on the victim's seventh birthday, Ms. Condra took the victim to get her ears pierced and the family had a cookout. He denied having any sort of sexual contact with the victim on that or any other day. [Petitioner], who claimed to be a father figure to the children, admitted beating the victim's brother with a belt, explaining that he was

"flustered." He contended that the victim's mother claimed to have been sexually abused as a child and often discussed the abuse in front of the victim.

*State v. Wilson*, 2005 WL 292434, at *1 - 3.

On these facts, Petitioner was convicted of attempted aggravated sexual battery and child rape (Addendum 1, vol. 1, verdict form at 22-23).

## III. STANDARD OF REVIEW

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) ( noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard ...

5

'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. DISCUSSION

The § 2254 petition for habeas corpus raises four main grounds for relief: (1) insufficient evidence to support the convictions; (2) insufficient evidence to support the grand jury indictment; (3) several instances of ineffective assistance; and (4) the State's bill of particulars was misleading and hindered Petitioner's rights to due process, a fair trial, and to mount a full and fair defense.

In his answer, the Warden argues Wilson is not entitled to relief with regard to the state court decisions rejecting the claims on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. In the alternative, Respondent asserts Ground two and, perhaps, Ground 4 are not cognizable federal claims in the first place. Finally, the Warden suggests one sub-claim of ineffective assistance was not fully exhausted in the state courts and is now procedurally barred from habeas corpus review. Respondent, therefore, argues the petition should be denied in its entirety, as none of the asserted grounds warrant relief.

Petitioner takes a contrary position, maintaining, in his reply to the Warden's answer, deference is unwarranted since the state court decisions on his claims fail the tests in § 2254(d). Wilson further maintains his claims are cognizable federal claims as he has framed them, but he does not address the State's assertion of procedural bar with respect to counsel's failure to cross-examine the victim's father.

The Court agrees with respondent Warden concerning the appropriateness of habeas corpus relief and, for the reasons which follow, will **DENY t**he petition and **DISMISS** this case. Wilson's grounds will be discussed in the order in which they were presented.

### A. Insufficient Evidence (Pet., Ground One).

In his first claim, Petitioner maintains evidence adduced at trial was inadequate to sustain his convictions for attempted aggravated sexual battery and rape of a child. As support for his claim, Wilson points to inconsistencies between the statements of two witnesses (the victim and her brother); to a lack of physical evidence of abuse; to a lack of the requisite degree of proof on the essential elements of each offense; and to the trial court's refusal to enhance his sentence on the "gratification" factor because the court viewed the victim's testimony as being too general to support the sought enhancement.

### 1. The Law

The controlling rule for resolving a claim of insufficient evidence resides in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (*Jackson* is the governing precedent for claims of insufficient evidence.). There, the Supreme Court held evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id*. at 319; *Cavazos v. Smith*, 132 S.Ct. 2, 6, 181 L.Ed.2d 311 (2011) (Under *Jackson*, a habeas court presumes the fact finder has resolved facts which support conflicting inferences in favor of the State and it must defer to that resolution.)

7

A habeas court reviewing an insufficient-evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson,* deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Cavazos*, 132 S.Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### 2. Analysis

The TCCA began its discussion of Petitioner's claim by defining the offenses of conviction, starting with the statute on child rape. Citing to Tenn. Code Ann. § 39-13-522(a), the TCCA stated: "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, is such victim is less than thirteen (13) years of age." *Wilson,* 2005 WL 292434, at *4. The TCCA defined "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id*. (quoting Tenn. Code Ann. § 39-13-501(7)).

The state court then defined the second offense, i.e., attempted aggravated sexual battery, as applicable in Petitioner's case, as "unlawful sexual contact with a victim by the defendant or

the defendant by a victim where [t]he victim is less than thirteen (13) years of age." *Id.* (quoting

Tenn. Code Ann. § 39-13-504(a) (4)).[1]

Next the TCCA gave the somewhat lengthy definition of attempt, which follows:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a) (3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a), (b).

Summarizing the proof which sustained the child rape conviction, the TCAA pointed to evidence that the victim and her brother were playing in another room when Petitioner called the victim into the living room, where he forced her to perform oral sex and instructed her to "suck it like a lollipop." The victim's brother corroborated his sister's testimony, telling the jury he saw the victim kneeling in front of Petitioner, both nude, with petitioner's penis in the victim's mouth. The TCCA then iterated the evidence which supported Petitioner's attempted aggravated sexual battery conviction, which included the victim's testimony that, while her mother and

---

[1] "Sexual contact includes the intentional touching of the victim's [or] the defendant's ... intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's or the defendant's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." This definition, which essentially tracks the one in Tenn. Code. Ann. § 39-13-501(6), was included in the trial court's instructions to the jury (Addendum 1, vol. 5 at 413). The TCAA omitted this definition in its opinion.

brother slept, Petitioner pulled her into the bathroom and instructed her "to suck his thing." She recalled that her mother tried to open the bathroom door but Petitioner would not let her. The victim's mother corroborated her testimony.

The TCCA recognized, where the sufficiency of the evidence is challenged, the relevant question is whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found all the essential elements of the offense beyond a reasonable doubt. The TCCA cited to *Jackson* and, therefore, its decision was not contrary to the controlling legal rule in Supreme Court cases. *See Gall*, 231 F.3d at 287-88.

Noting the jury was free to accept or reject the witnesses' testimony, in whole or in part, and concluding the evidence detailed above, viewed in the light most favorable to the State, was sufficient to sustain Wilson's child rape and attempted aggravated sexual battery convictions, the TCCA declined to give any relief.

In his reply, Wilson maintains several inconsistencies between the testimony of the victim and her brother, such as what color bathing suit she was wearing on the day of the rape, whether Petitioner was seated on a couch or a loveseat, and whether Petitioner was naked or not, shows the evidence was not sufficient. Further demonstrating the lack of sufficient evidence, according to Wilson, was the testimony of the nurse who performed a physical examination of the victim and who found an intact hymen and no fissures or loss of tone in the victim's rectal area, presumably underscoring the lack of any physical corroboration of the type of sexual abuse described by the victim.

Petitioner additionally finds it suspect and an indication of insufficient proof that, while the victim testified to multiple acts of sexual abuse, the prosecution only charged two crimes. This leads Wilson to conclude the jury was confused and, thus, could not determine which

elements to apply to which count. Finally, there were questions concerning the victim's motivation in alleging sexual abuse against Petitioner, which might have been prompted by a claimed beating her brother sustained at the hands of Petitioner.

Whether to credit testimony offered by witnesses, how to resolve inconsistencies between the testimony of witnesses, what inferences, if any, to draw from the testimony—all are issues to be determined by the fact finder, in this case Wilson's jury, and not by this federal habeas Court. *Jackson*, 443 U.S. at 319.

From the evidence outlined above, this Court concludes the state court reasonably determined the proof in Petitioner's case was constitutionally sufficient and now declines to issue the writ because he has failed to demonstrate the state court's application of *Jackson* to the facts of his case was unreasonable or its decision based on an unreasonable factual determination.

## B. Insufficient Evidence and Prosecutorial Misconduct before the Grand Jury (Pet., Ground Two).

Here, Wilson asserts only one witness was presented to the grand jury, who testified as to an alleged sexual abuse occurring on August 30, 2001. Yet, afterwards the prosecutor signed two bills of indictment alleging two counts consisting of aggravated sexual battery and rape of a child. The indictments were not based on actual proof and the prosecutor engaged in misconduct thereby.

In state court, Wilson claimed his due process rights were violated by the presentation to the grand jury of the testimony of a witness who possessed no first-hand knowledge Petitioner had committed the crimes with which he was charged.

11

When presented with the above claim, the TCCA ruled the indictment was valid on its face, and, thus, a review of the quality of the evidence offered to the grand jury was unwarranted. It did not review the claim.

The Supreme Court has held that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment." *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

Petitioner's claim regarding Tennessee grand jury proceedings does not raise a cognizable constitutional claim.[2]

## C.      Ineffective Assistance of Counsel (Pet., Ground Three).

Petitioner asserts he received ineffective assistance from his attorney at trial with respect to counsel's failures to investigate, interview, prepare and cross-examine witnesses and to adequately convey the State's plea offer. Wilson further maintains the cumulative effect of these shortcomings was such as to deprive him of his constitutional right to effective assistance of counsel.

### 1.   The Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

---

[2] Even where a federal defendant challenges federal grand jury proceedings, as guaranteed to a criminal accused by the Fifth Amendment, the Sixth Circuit has held the "validity of an indictment is not affected by the type of evidence presented to the grand jury, even though that evidence may be incompetent, inadequate, or hearsay." *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982).

12

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.*

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States,* 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland,* 466 U.S. at 694). A petitioner must demonstrate, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the

13

defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 2. Analysis

When these claims of ineffective assistance were carried to the TCCA, the state appellate court cited among other cases to *Strickland* and employed its two-pronged test in reviewing Petitioner's claims of ineffective assistance. Thus, its conclusion relative to those claims is not contrary to the well-established legal rule in Supreme Court cases governing these types of claims. The question then becomes whether the state court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

Each of counsel's alleged failings will be addressed individually.

### a. Failure to investigate, interview and prepare witnesses

As his first example of ineffective assistance, Petitioner points to counsel's failure adequately to investigate and interview two witnesses and one potential witness.

*Strickland* imposes upon an attorney "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). An attorney must perform a reasonable investigation of witnesses and a failure in this regard, where prejudice results, can constitute ineffective assistance.

Petitioner's claims with respect to these three witnesses, two called to testify for the prosecution and one uncalled by either party, are addressed in the order in which they were presented.

### i. Audrey Condra

Petitioner asserts, in his § 2254 petition, that Ms. Condra, his ex-girlfriend and the victim's mother, testified inconsistently with her sworn testimony at a prior juvenile hearing. At trial, she testified as to "observing abuse," whereas, in the prior hearing, she testified "as to no allegations of abuse" (Court File No. 1, Pet. at 10).[3]

In state court, Wilson contended counsel failed to attack Ms. Condra's credibility by using undated letters she had written to him [Wilson] while he was incarcerated, in which she professed her love for him and desire to reconcile with him. *Wilson*, 2011 WL 1672035, at *4 and *6. The "letters" allegation was not contained in Wilson's federal petition, but instead his reply to the Warden's answer, where the Warden addressed the "letters" issue (Court File No. 25, Petr's Reply at 26). A reply to a respondent's answer to a habeas corpus application is not the proper pleading in which to present arguments in support of a claim. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."). Nevertheless, the Court will exercise its discretion and address the "letters" claim.

As recounted by the TCCA, counsel testified, at the post-conviction hearing, he "had a pretty good idea of what [Ms. Condra] was going to testify to" and, rather than to use the undated letters to impeach her credibility, elected to use the transcript from her parental rights termination hearing, even though he had not interviewed her. The TCCA saw no basis for finding ineffective assistance and affirmed the lower court's determination.

According to the lower state court, counsel had used Ms. Condra's previous sworn testimony in juvenile court that she did not see any sexual contact going on to extract an

---

[3]  The prior juvenile hearing to which Petitioner refers was a parental rights termination hearing. *Wilson*, 2011 WL 1672035, at *8.

admission during her trial testimony that "she had not known of, witnessed, or heard, any sexual misconduct committed or done by [Petitioner] and that no complaint was ever made to her nor any action taken by her" (Doc. 13, Addendum 3, vol. 1, Order of Mar. 17, 2010 at 69). Characterizing this line of cross-examination as a strategic choice and one not to be "second guessed," the trial court determined no ineffective assistance had been established, [*Id.*]

*Strickland* instructs that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S at 690. Wilson has not shown there was no investigation of this witness; that any investigation was not thorough; or that counsel's strategic choice was not reasonable. *See Nichols v. Heidle*, 725 F.3d 516, 543 (6th Cir. 2013); *Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002)).

Here, Wilson did not overcome the strong presumption that counsel's claimed misstep "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. And given Ms. Condra's acknowledgement during her trial testimony that, in keeping with her testimony at the earlier proceedings, she had not observed Petitioner sexually abusing her daughter, there was no prejudice. Also, even if the actual transcript of the parental rights termination hearing was not entered into evidence to assist the jury in making a credibility determination, as Wilson suggests counsel should have done (Court File No. 25, Petr's Reply at 18), this does not mean counsel did not make a reasonable strategic decision as to the best method to use in cross-examining this witness.

The Court finds relief unwarranted here because the TCCA's rejection of Petitioner's claim of ineffective assistance was not an unreasonable application of S*trickland* and because the

state court did not unreasonably determine the facts placed before it. *See Debruce v. Commissioner, Alabama Dept. of Corrections*, 758 F.3d 1263, 1269 (11th Cir. 2014) (The state court did not unreasonably decide, under *Strickland*, that counsel did not give ineffective assistance by failing to cross-examine a witness with a transcript of his interrogation.).

No writ will issue on this subclaim of ineffective assistance.

### ii.    Carla Newman

In his second claim in this category, Wilson alleges counsel failed to investigate Carla Newman, the victim's aunt, who, along with her husband, had threatened to send the victim and her brother from her home into foster care, if they did not fabricate a story of abuse against Petitioner. Ms. Newman did not testify at trial.

The TCCA, in addressing this issue, found Petitioner had not presented her testimony at the post-conviction hearing and, thereby, had failed to show a deficient performance on the part of his trial attorney. Even here, Wilson has not explained what would have been revealed as a result of an investigation of Ms. Newman or an interview with her; how her testimony would have been helpful to the defense; or even whether she would have been available as a witness.

These omissions are fatal to his claim because, absent these details concerning Ms. Newman's testimony, there is nothing to show either a deficient performance or any prejudice accruing from counsel's failure to present such testimony. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce[] affidavits or any other evidence establishing what they would have said").

In denying Wilson relief on his claim, the TCCA did not unreasonably apply *Strickland* nor unreasonably determine the facts placed before it. Therefore, this Court concludes habeas relief is not warranted with respect to this alleged attorney shortcoming.

### iii. Nurse Kathy Spada

Petitioner faults his attorney for failing to establish Nurse Kathy Spada made inconsistent statements. More specifically, Wilson asserts Nurse Spada ruled out in her reports any evidence of physical abuse yet, at trial, testified she could not rule out vaginal or oral penetration of the victim.

The TCCA noted trial counsel stated, at the post-conviction hearing, he could not recall whether he conducted a telephone interview with Ms. Spada in preparation for trial, but knew he had reviewed her report, which was favorable to his client. The report was favorable, in counsel's opinion, because "Ms. Spada did not find any evidence of vaginal or anal penetration when she examined the victim." *Wilson*, 2011 WL 1672035, at *9. The TCCA denied relief on the issue because it agreed with the post-conviction court that Petitioner had failed to show a deficient performance on the part of counsel.[4] *Id.*

Although a failure to properly cross-examine a witness could form the basis for a finding of ineffective assistance*, Jackson v. Houk*, 687 F.3d 723, 742-43 (6th Cir. 2012), such decisions typically are not subject to second guessing and are entitled to be presumed sound trial strategy. *See United States v. Friedman*, 1993 WL 386797, *3 (6th Cir. Sept. 30, 1993) ("[T]actical decisions must be particularly egregious before they will provide a basis for relief.") (citing *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984)); *see also Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's

---

[4] The Court can find no ruling on the claim in the post-conviction court's order, declining to grant petitioner post-conviction relief (Doc. 13, Addendum 3, vol. 1, Order of Mar. 17, 2010 at 64-70).

trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

The transcript of the trial shows Wilson's attorney thoroughly cross-examined Nurse Spada regarding the findings contained in the report and left no stone unturned in his effort to undermine her testimony concerning her inability to rule out vaginal or oral penetration of the victim (Doc. 13, Addendum 1, vols. 3-4 at 199-214). Wilson does not suggest anything more counsel could have done with respect to this witness.

Given the "doubly deferential" review of a *Strickland* claim under § 2254(d)(1), *see Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420 (2009), as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds relief unwarranted here because the TCCA's rejection of Wilson's claim of ineffective assistance was not an unreasonable application of *Strickland* and because the state court did not unreasonably determine the facts placed before it.

### b. Failure to cross-examine witnesses

Counsel's failure, as alleged in this category of ineffective assistance claims, was his inadequate cross-examinations of three witnesses—the victim, her brother, and her father.

### i.    The victim

Wilson maintains the victim had made prior allegations of sexual abuse against her biological father and had gained knowledge concerning "sexual terms" from her mother (Court File No. 1, Pet. at 10). Moreover, according to Petitioner, the victim had made statements to the forensic interviewer, which were contradictory to her trial testimony. Further, Wilson seemingly maintains the victim and her brother fabricated the allegations of sexual abuse. All of these

issues might have been used to impeach the victim's credibility, but were not used for this purpose.

When this claim was offered to the TCCA, it stated:

> The victim was nine years old at the time of the trial. Trial Counsel testified that it was his trial strategy to engage the victim in a conversational style of cross-examination, rather than blatantly accuse her of lying. In particular, Trial Counsel recalled that he was trying not to cause the victim to cry in front of the jury. Although he knew that the victim had also made accusations of sexual abuse against her father, Trial Counsel decided not to question the victim about her prior allegations because doing so would open the door to allow the State to question the victim about other statements included in the forensic interviewer's report. Trial Counsel was especially worried about the introduction of one part of the report, in which the victim compared the penises of the Petitioner and her father.

*Wilson*, 2011 WL 1672034, at *9. The TCCA then pointed to the post-conviction court's characterization of counsel's alleged failings as "a tactical decision not to delve into the prior allegations of abuse of the victim by her biological father citing well-founded concerns that the jury could draw negative conclusions from such an approach." *Id*. The TCCA denied relief based on *Strickland*'s instruction to reviewing courts to refrain from second guessing counsel's reasonable trial tactics. *Id*.

The TCCA did not unreasonable apply *Strickland* by rejecting this claim of ineffective assistance. Counsel's decision as to how best to conduct the victim's cross-examination is presumed to be a tactical decision to which this Court must defer. "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

20

Nothing Petitioner has presented overcomes this presumption and, as a result, he has not shown the TCCA's adjudication of his claim resulted in an unreasonable application of *Strickland* or was based on unreasonable factual determinations. Thus, habeas relief cannot be granted on this claim.

### ii. The victim's brother

In this claim, counsel is said to have given ineffective assistance by failing to cross-examine the victim's brother about receiving a "whipping" from Petitioner and about having been manipulated by his aunt to fabricate the sexual abuse allegations. The impetus for the fabrication, according to Wilson, was the aunt's threats to send him and his sister to an orphanage.

Wilson's contentions about using his aunt's alleged threats to impeach the credibility of the victim's brother were not raised in his post-conviction brief in the TCCA (Court File No. 13, Addendum 4, Doc. 1, Petr's Br.), and, thus, have not been exhausted. *Rose v. Lundy*, 455 U.S. 509 (1982) (finding federal claims must be completely exhausted by being fully and fairly offered to the state courts before seeking federal habeas corpus relief). They, however, have been technically exhausted, since no remaining state court remedies are available to Petitioner, due to the post-conviction statute of limitations, as well as the State's one-petition rule, *see* Tenn. Code Ann. § 40-30-102(a) and (c), and they are now procedurally barred.

This means Wilson can only obtain habeas corpus relief upon a showing of cause for his failure to raise the issue in the TCCA and prejudice flowing therefrom. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Petitioner has not shown, or even alleged, cause and prejudice to surmount the default, and he thereby has forfeited federal habeas corpus review of this claim.

As to Wilson's contentions regarding his "whipping" of the victim's brother as the impetus for the allegations of sexual abuse, counsel addressed this issue at the post-conviction evidentiary hearing, according to the TCCA's opinion. He stated he was aware of one possible defense surrounding the whipping, which had itself prompted another indictment against Petitioner for aggravated assault.

Determining that answers given during cross-examination of the victim and her brother had not lent any support to this theory of defense, the post-conviction court, as noted by the TCCA, had found that counsel, nonetheless, was able to elicit from a Department of Children's Services witness "that the allegations were made against the [Petitioner] only after the agency became involved following the whipping" and "that had it was only then that the children told about the sexual abuse allegations against the Petitioner." *Wilson*, 2011 WL 1672034, at *10.

The post-conviction court characterized counsel's decision as strategic since he emphasized, in his closing, the deficiencies in the testimony of the victim and her brother, the time frame of the interviews, the lack of physical evidence, and the state's choice at election as to which counts to proceed on, and chose not to highlight any association between the timing of the "whipping" and the allegations of sexual abuse. As did the post-conviction court, the TCCA found Petitioner had failed to show a deficient performance.

As noted, an attorney's strategic choices made after thoroughly investigating law and facts pertinent to plausible options "are virtually unchallengeable." *Strickland,* 466 U.S. at 690. The record supports that counsel investigated the issue, as revealed in his testimony that he knew about the "whipping," discussed the implications of the "whipping" with Petitioner, but chose to undermine the credibility of the testimony of the victim's brother by focusing on other weaknesses in the prosecution's case.

Given the AEDPA "demands that state-court decisions be given the benefit of the doubt," *Renico v. Lett*, 599 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (citations omitted), and in view of the onerous standard which must be met to prevail on an ineffective assistance claim under the AEDPA, *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011), the Court finds relief is unwarranted here because the TCCA's rejection of Petitioner's claim was not an unreasonable application of *Strickland* and because the state court did not unreasonably determine the facts which were placed before it.

### iii.     The victim's biological father

Petitioner alleges, in his reply, though not in his § 2254 petition, counsel gave him ineffective assistance by failing to cross-examine George Condra, the victim's biological father (Court File No. 25, Petr's Reply at 2). As the Court has observed, a claim alleged for the first time in a reply is not properly before the Court. *See Tyler*, 416 F.3d at 504. Though the Court could decline to address the claim, the Court will exercise its discretion to entertain it. Entertaining the claim will not help Petitioner, however, because the claim is subject to a procedural bar.

Wilson's contentions concerning counsel's failure to cross-examine the victim's biological father were not raised in his post-conviction brief in the TCCA (Court File No. 13, Addendum 4, Doc. 1, Petr's Br.) and, thus, have not been totally exhausted. Yet, given the lack of any remaining state court remedies, *see* Tenn. Code Ann. § 40-30-102(a) and (c), they have been technically exhausted, but procedurally defaulted. This Court will entertain the allegations if Wilson shows both cause to excuse his default and resulting prejudice. *Coleman*, 501 U.S. at 732.

No such showing has been made, and federal review has been forfeited.

### c. Failure adequately to convey plea offer

In his next to last claim of ineffective assistance, Wilson maintains counsel failed to convey the 12-year plea deal offered by the prosecution and to explain the relevant facts which would have allowed him to make an informed and knowledgeable decision as to whether to accept or reject the offer. Wilson asserts counsel informed him of the offer five minutes prior to trial but did not explain the merits or drawbacks of the offer, nor inform Petitioner the victim's mother had changed her testimony from that which she gave at an earlier proceeding, when she stated she did not observe Petitioner abusing her daughter. Furthermore, counsel did not explain he would not question the victim's biological father concerning the victim's prior allegations nor tell him the State might decide to proceed on the allegations of oral sexual abuse alone, even if the evidence did not support allegations of vaginal or anal penetration.

As held in *Missouri v. Frye*, 132 S.Ct. 1399 (2012), a "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. The only detail Wilson provides about the plea offer is it involved a 12-year prison sentence, so the Court lacks the information to determine whether the plea contained terms and conditions favorable to Petitioner which counsel would have needed to discuss with his client to avoid providing ineffective assistance. Also, Petitioner does not allege he suffered any prejudice.

Still, the Court liberally construes the instant claim as being the same as the one Wilson offered to the TCCA. In its discussion, the TCCA stated:

> Trial Counsel did not remember the details of any plea offers made by the State in the Petitioner's case. However, he stated that his normal practice is to summarize expected testimony during one of his initial meetings with his clients and that he discusses the elements of the offense and range of punishment when he informs his clients of a plea offer. Additionally, we note that the post-

conviction court credited Trial Counsel's testimony and found that Trial Counsel discussed the results of his investigation with the Petitioner prior to the trial.

In his brief, the Petitioner states that, during the post-conviction hearing, he specifically stated th[at] he would have accepted the State's plea offer had trial counsel informed him that [Ms.] Condra would testify against him, that Nurse Spada's testimony did not refute the allegations, and that the State could elect to prosecute Petitioner on oral penetration alone. However, the Petitioner does not provide citations to the record to support his assertion that he testified he would have accepted the State's plea offer had Trial Counsel informed him of these things. Moreover, our review of the record does not reveal the Petitioner provided such testimony. When asked whether he would have accepted the plea offer if he knew the State could elect only an allegation of oral sex, the Petitioner replied, "It would have made me think." Additionally, the Petitioner acknowledged that he did not base his decision to reject the plea offer on Ms. Condra's testimony, but rather on the facts that he was innocent and that he did not think he would be found guilty.

In its order denying relief, the post-conviction court found as follows:

It was apparent from the proof and testimony that the [Petitioner] had no intention of accepting a plea agreement and thought that he would not be found guilty. The [Petitioner] never indicated to his attorney that he had reconsidered the [S]tate's plea offer and decided to accept the offer. The [Petitioner] indicated at the post conviction proceeding he might have accepted the plea offer, ... if he had known how it would turn out....

*Wilson*, 2011 WL 1672035, at *10-11. The TCCA went on to conclude Petitioner had not established a deficient performance with respect to the discussion of a potential plea agreement.

Under *Hill v. Lockhart*, 474 U.S. 52 (1985), ineffective assistance claims in the context of a guilty plea are governed by the *Strickland*'s test. *Frye*, 132 S. Ct. at 1405 (citing *Hill* at 57). Under that test, "the reasonableness of counsel's challenged conduct" must be evaluated "on the facts of the particular case, viewed as of the time of counsel's conduct" *Strickland,* 466 U.S. at 690.

25

In this case, though counsel could not recall the details of any plea offers made to his client, the post-conviction court credited counsel's testimony and found, pursuant to his usual practice, when plea deals are in the offing, he had discussed the results of his investigation with Petitioner, including the expected testimony of witnesses, elements of the offense, and range of punishment when he informs a client of a plea offer.

"Credibility determinations are factual determinations" and "[a]s such, a decision based on a credibility determination 'will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'"*Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner points to nothing specific to show any unreasonableness about the post-conviction court's factual determination, and this Court must accept those findings.

Given counsel's accredited advice to Petitioner, the state court did not unreasonably apply *Strickland* in determining counsel did not render a deficient performance in this respect. *See Frye*, 132 S. Ct. at 1408 (pointing to the ABA's recommendation that defense counsel "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney"). Nor did the TCCA unreasonably determine the facts placed before it in disposing of Wilson's claim.

### d. Cumulative effect of counsel's errors

The TCCA rejected Wilson's final claim, in which he maintained the cumulative effect of each of counsel's errors denied him effective assistance of counsel. The TCCA did so because it found no attorney errors which it could accumulate to reach this conclusion.

26

Wilson has not cited to a Supreme Court case which demonstrates the TCCA's conclusion was an unreasonable application of *Strickland*, and indeed, the Court is unaware of one. No relief is warranted on this claim either.

**D.      Misleading bill of particulars (Pet., Ground Four).**

In his final claim in the petition, Wilson asserts the prosecution furnished him with a misleading bill of particulars and thereby denied him his rights to due process, to a fair trial, and to present a defense. More specifically, he maintains that, after he was indicted for one count of rape of a child and one count of aggravated sexual battery, which allegedly occurred between January 1, 1999 and August 31, 2001, the State provided him with a bill of particulars, pursuant to Wilson's request.

However, the bill of particulars was not specific enough to allow him to prepare his defense, even though the prosecution knew one specific date (the victim's 7th birthday). Moreover, the answer to Wilson's question, "What type of sexual contact?" were "oral penetration," and the answer to his question, "What type of sexual penetration?" was "sexual contact" (Court File No. 1, Pet. at 14). Additionally, the prosecution waited until 15 days prior to trial before supplying Petitioner with the bill of particulars.

And though the State knew, at that late date, it would not seek a conviction on any event which occurred prior to March or April of 2001, it did not narrow the date range of the indictment. The prosecution likewise knew it would rely on oral penetration to establish the child rape charge, which, due to the lack of any physical evidence to confirm vaginal or anal penetration, would leave Petitioner to engage in a swearing match with the victim to defend himself against the charge.

Wilson contends state law requires the prosecution to disclose specific, detailed information it has when child sexual abuse charges are involved and to provide candid responses in a bill of particulars. Wilson complains the State's imprecise and vague responses in the bill of particulars constitute prosecutorial misconduct and impaired his right to present a defense.

Claiming the state court's adjudication of his claim was contrary to or involved an unreasonable application of clearly established law and, moreover, was based on an unreasonable determination of the facts, he asks the Court to grant him habeas corpus relief.

Respondent Warden, not surprisingly, asserts the TCCA's opinion with respect to this final claim was none of the things Petitioner suggests it was, meaning he is not entitled to the writ.

In his direct appeal, Petitioner offered this claim as an illustration of prosecutorial misconduct based on an insufficient and misleading bill of particulars. Citing to state law, the TCCA explained a bill of particulars serves to inform a defendant of the circumstances surrounding the charge, so as to enable him to prepare his defense, avoid prejudicial surprise at trial, and preserve a plea of double jeopardy, though the state court cautioned a bill of particulars is not a discovery device. However, because of the unique character of a sexual abuse case involving a child, when a minor victim—and, hence, the prosecution—is unable to supply a precise date on which the offense allegedly occurred, the possibility exists that descriptive information may be made available which will narrow the time frame of the indictment, even if specific dates cannot be furnished. Relief may be had if it can be shown that the lack of specific details has hindered the defense.

The TCCA then described Wilson's requests of information to be furnished in a bill of particulars and the State's responses thus:

> Here, the indictment charged [petitioner] with aggravated sexual battery and rape of a child that occurred "between January 1, 1999 and August 30, 2001." In his motion for a bill of particulars, [petitioner] asked the state to identify the exact location of each offense, the time of day or night, the identity of any persons who were residing at or visiting the relevant location, the specific nature of the sexual contact alleged, the date of the first report of the offenses, the nature of any physical evidence, the age of the victim at the time of the offenses, and the circumstances whereby the defendant had the opportunity to commit the offenses. In its response, the state provided the locations of the offenses, the nature of the offenses (oral penetration), all parties residing in each of the relevant locations, the time frame of the occurrences (between August 1999 and August 2001), and the circumstances under which [petitioner] had the opportunity to commit the crimes.

*State v. Wilson*, 2005 WL 292434, *6 (Tenn. Crim. App. Feb. 4, 2005).

Addressing Wilson's contention that the State, though aware of the information, failed to disclose, in the bill of particulars, that one incident had occurred on the victim's seventh birthday, the TCCA found, while the information had not been disclosed in the bill of particulars, the record showed Petitioner was given information prior to trial that one incident of oral sex had occurred on the victim's birthday. The TCCA further found Wilson had not shown how his defense was hampered by the absence of this information in the bill of particulars, and it declined to grant relief.

To the extent this claim is based on state law, it is not a cognizable claim, since a federal habeas court does not sit "to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As one sister district court, has noted: "An evidentiary rule, such as the adequacy of a bill of particulars, is a question of state law and not cognizable in a habeas proceeding." *Lear v. Poole*, 711 F.Supp.2d 288, 297 n.1 (W.D.N.Y. 2010). "[I]it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010). Petitioner's "contention that the State's summation, while consistent with the indictment,

deviated from its bill of particulars, does not present a federal claim." *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).

Even so, the Constitution requires that, whatever method a state selects to charge a criminal offense, the accused must receive "notice of the specific charge." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (holding that "notice of the specific charge ... [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal"); *Richmond v. Perini*, 1985 WL 13707, *2 (6th Cir. Sept. 13, 1985) noting "any due process violation" in connection with bill-of-particulars claim "would have to be premised on lack of sufficient notice of the charges against defendant").

And, the notice must be adequate so as to enable the criminal accused to formulate a defense to the charge. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984*). See also Russell v. United States*, 369 U.S. 749, 763-64 (1962) (finding adequate notice of the charges to be one of three specificity requirements in a charging instrument). Describing the offense "with some precision and certainty . . . as will enable a presumptively innocent man to prepare for trial" will satisfy the constitutional requirement of fair notice. *Koontz*, 731 F.2d at 369. However, "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus." *Mira v. Marshall*, 806 F.2d 636 (6th Cir 1986).

Applying the *Russell* criteria for evaluating the specificity of a charging document, the Sixth Circuit has pointed out prosecutors should be as specific as possible in setting forth the dates and times of abuse offenses, but has also recognized the constitutional notice requirement will tolerate fairly large time frames given "the reality of situations where young child victims are involved," since those victims may be unable to remember exact dates and times. *Valentine*

*v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005). On the other hand, where "[t]he indictment, the bill of particulars, and even the evidence at trial fail[s] to apprise the defendant of what occurrences formed the bases of the criminal charges he face[s]," the constitutional mandate of fair notice is violated. *Id.* at 634. Also, the constitutional right to fair notice is violated by the lack of a distinctive factual basis supporting each count, such as the time-frame, the type of sexual action, or the location or time of day of the alleged offense—information which will enable a criminal accused to differentiate between the counts and defend against each individual charge. *Id.* at 633-34.

Even though the TCCA did not cite to the above Supreme Court cases which govern the notice requirements, it was not required to do so to entitle its adjudication to the deference owed to state court decisions in § 2254(d). *Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010) (observing that [t]he state court decision need not cite Supreme Court cases, or even evince an awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them") (citations and internal quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. 770 at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by the AEDPA is even more constricted than AEDPA's plain language already suggests.") (citing *Harrington*, 131 S. Ct. at 786).

In view of the high bar under the standard set by the AEDPA which a petitioner must surmount, the Court finds Wilson has not borne his burden of showing the state court unreasonably applied the controlling Supreme Court precedent on constitutional notice or

unreasonably determined the facts in finding no merit to Petitioner's challenge to his bill of particulars. No writ will issue.

## V.    CONCLUSION

Based on the above legal principles and reasoning, the Court finds none of Petitioner's claims warrant issuance of the writ and, therefore, by separate order, will **DENY** this § 2254 application and will **DISMISS** this petition.

## VI.    CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c) (2).  A petitioner whose claims have been rejected on a procedural basis must demonstrate reasonable jurists would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis and the law upon which is based the dismissal of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings or its assessment of the claims. *Id.* Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**A separate judgment will enter**.

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**